Next case is U.S. v. Levinson. Ms. Eisenstein. May it please the Court. Alana Eisenstein on behalf of the appellant, United States of America. Your Honor, if I may, I reserve three minutes for rebuttal. That request will be granted. Your Honor, post-Gaul, at a minimum, the District Court opinion supporting a sentence must follow proper sentencing procedures, but also must be grounded in the factual record and must set forth logical and reasoned application of the statutory sentencing factors under Section 3553A. In this case... Are you saying there are procedural errors here? Your Honor, the clear errors that the District Court committed in this case go to both procedure and substance. Under Gaul, the Gaul Court treated clearly erroneous factual findings and reliance thereon at sentencing as a procedural error. However, of course, there's also a substantive aspect to that particular error, type of error. And in this case, there was clear error. Let's talk substantive for a minute and go right for the jugular. Suppose, substantively, from the standpoint of reasonableness, we decided this sentence was wrong and we remand this matter. What instructions do we give to the district judge? Keep trying until you get it right? Really, I don't know for the life of me how we're going to deal with this. Your Honor, and clearly under the sentencing, the new sentencing rubric where district courts have much greater discretion, certainly than the mandatory guideline scheme, but even in the immediate wake of Booker. But here, the district court needs to, in its opinion, supporting the sentence. Yes, try again to both think more about the particular factors mandated by Section 3553A, and in particular, to support whatever sentence the district court ultimately comes to. But do they get a do-over? If we agreed with you on the substantive issue, does the district court get a do-over, or do we direct them based on the record that a probationary sentence is unreasonable? Your Honor, I believe that on the record in this case, a probationary sentence is unreasonable. But in terms of the actual procedure on remand, if a substantive error is found, I believe that there is a resentencing procedure that would take place. Because in the end, reasonableness is still a range and not a point. So this court respectfully would not dictate that a particular sentence would be imposed, but rather say that the sentence is not supported, and a probationary sentence in this case was not supported by the record in this case, by the very findings of the district court that the court made at sentencing and the undisputed findings in the record. And so go back and resentence, given the fact that there is still a range of reasonable sentences. But we could tell them that certain things are beyond the pale. We could tell them that we don't think the facts would support that probation. We could tell them that at least. Precisely. In particular, since the district court relied so heavily on the nature of the harm in this case and a finding that the defendant did not harm the public from a financial point of view, a finding not only that was clearly erroneous, but that completely ignored the tax charge in this case, which itself would have dictated. Why don't you go to your, is that what you're saying are the procedural errors? Yes, Your Honor. Why don't you address that? So the clear error in this case stemmed from the fact that the district court focused, and in some places it's understandable since the driver of the sentencing guidelines was the wire fraud charge rather than the tax, the fraudulent tax charge. Nevertheless, when the district court decided not to impose sentence on the wire fraud charge and completely ignored the clear public and undisputed public financial harm from the defendant's tax filing. You say completely ignored. Is one conceivable reading of the district court's comments that the weight of the offense here was private, that is a person defrauding a business partner, and that that aspect of it was a distinguishing feature as opposed to more obviously public victim crimes? I mean, you're saying there was a finding of fact and it was clearly erroneous. Is that the only way to read the record, Ms. Eisenstein? Well, Your Honor, respectfully, there are two facets of the district court opinion. One is the finding she specified, the district court specified, no public financial harm from a financial point of view. And that is the area of clear error. In terms of the characterization of the extent of harm and the victims in this case, and this, as we point out in our brief, this so-called public-private dichotomy and the policy that the district court really announced that private harms are unworthy of jail time as opposed to how she framed it as public harms, which are the type of harms that would typically get a jail sentence. Well, again, you're characterizing what she said, saying she announced the policy. Is that the only way to read this record? Or is it fair to read this record as her saying, I have experience and this is the sort of thing I've done in one type of case, this is the sort of thing I've done in another type of case, as opposed to saying I'm announcing a policy henceforth? Your Honor, I believe that the reading that the district court, the words that the district court used were that in all of the cases that I have looked at sentences, that I've only imposed jail sentences for crimes that impacted the public in some fashion. And then the list of crimes that fall under that category, which would be credit card fraud, she listed identity theft, theft from pension funds, actions by public officials. It's unclear why an individual victim of a credit card fraud or an individual victim of identity theft is in any way more public than the investors in the case of Elkay, the victim in this case, or for that matter, the employees that the district court itself found were harmed by the fact that the defendant sanctioned them for failure to participate in the fraud. Doesn't that undermine your argument? The judge's statement of sentencing as a whole, we're not going to single out particular remarks. Isn't that an approach that we've tried to establish in this circuit? Your Honor. Is your position going to be every time the judge references some fact that might not be so, that we've got procedural error and we've got a remand? Is that what you're trying to tell us? Your Honor, absolutely. The standard is totality of the circumstances. But at the same time, this court is held in Greer and under the familiar abuse of discretion standard where the judge relies in substance and in any material way on a fact that is clearly erroneous, that that in and of itself is a basis for a reversal and remand. And to turn to the totality of this case, this is a case where the district court began its opinion by finding very extensive and serious fraud, a fraud that she in no way distinguished as somehow mitigated. She found that this was a fraud where the defendant lasted over two years involving numerous misrepresentations, detailed, extensive, thorough effort to conceal, shredding documents, inducing employees to participate. I'll grant you all that. If I was still a district judge and you were in front of me in all candor, you would probably convince me to put this person in jail. But that's not the standard, is it? It isn't, Your Honor. But as the Seventh Circuit recognized in the Amole case, it's also a matter of whether the case, the decision … Well, the Seventh Circuit might have said that, but the Supreme Court has something else to say about the MOBO determinations in Gaul, didn't they? Absolutely, Your Honor. And the government is not asking for de novo determination. What the government is pointing to is that when a sentencing decision is made, the starting point for that decision is the opinion of the district court. And where there is a substantial variance, as here, as Gaul recognized, then the district court itself must be cognizant of the extent of the variance, but so too must this court. I don't mean to grill you unnecessarily, but I foresee this is a Pandora's box that we're opening here. I can see panels of this court in almost identical situations arriving at different results. I mean, I just see this leading to chaos unless we adopt a hands-off approach. Well, I don't want to answer the question, but the government didn't necessarily bring that forward. That's what Booker said, and the government hasn't, and the Supreme Court hasn't taken that away from us yet. Yeah, I don't know. I mean, well, all right, Tomko, I mean, let's put the cards on the table. But where is this going to end? I foresee a real problem here. Help us with it. Yes, Your Honor, in terms of a standard and in terms of Tomko, certainly there are salient aspects of Tomko that survive Gaul. Gaul did not say appellate review is over. Gaul, in fact, emphasized the important and critical role of the Court of Appeals in ensuring uniformity in sentencing and ensuring that the district courts follow proper procedures and provide a reasoned basis for the decision, and that's what's lacking here. Here you have a case where the experienced defense counsel in this case said, it would be ridiculous for me to argue for probation. The district court said, I feel somewhat foolish even imposing probation. No, well, that's not a fair statement, really. The district judge was saying, was she not, I think that there's something short of incarceration that will work here, and the sentence that will work is probation with house arrest, et cetera. I mean, it wasn't a circumstance where the district judge said, I don't think there are any restrictions that ought to be put in place. She said what the restrictions were, and to get to those restrictions, probation was the vehicle, right? Yes, Your Honor, but in a case where the district court began by finding that this was an extremely serious crime, there was really no mitigating factors with regard to the nature and seriousness of offense pointed to by the district court. The district court, moreover, pointed to the history and characteristics of the defendant and found them wholly unremarkable. The district court said he doesn't stand out by virtue of his personal characteristics, the harm to his family, the mental health issues he claimed. She said, no, actually your energy and productivity were precisely the type of qualities required for this particular fraud. And then in imposing, ultimately deciding to depart and to grant what is really an extraordinary variance to go from 24 to 30 months down to probation, the district court then relied on clearly erroneous finding of no public financial harm, plus the narrow view of the private victim in this case, one that was, for the most part, ill-defined. She gives a list of crimes that deserve jail time, that are worthy of punishment, but frankly that list is one that could very well lead to an arbitrary result. Did she also rely on the civil settlement? Yes, Your Honor, and that in and of itself was inappropriate on several levels. Let's assume that it was appropriate. Even assuming that it was a legitimate sentencing factor, given the fact that the loss was driven by the $177,000 that the defendant embezzled, which was above and beyond the civil settlement by stipulation of the parties and by the findings of the district court, that factor could not have given much weight and really belied the $177,000, belied the fact that this was a case where the financial aspects had been resolved amicably as the district court determined. We will have you back for rebuttal. Thank you. Thank you. Mr. Lyons. May it please the Court, my name is Edmund Lyons and I represent Adam Levinson. I cut to the quick with her. Let me do it with you. Tom Coe got three years probation, one year of house arrest, a substantial fine in community service, and his guideline range, I believe, was 12 to 18 months. Your range is 24 to 30, and you got two years probation but only six months house arrest. What do we do with this? Well, you know, the problem yesterday, I was here yesterday where a similar issue was argued before two of the three judges here, and I think it was Judge Fisher said, you know, they told us to do this, me and the Supreme Court, but what kind of guidance did we get? And I'd be the first one to tell you you didn't get much, and if you don't think you got much, think about what the district court is doing. But they still haven't told us not to do it. It continued itself to do this. But, you know, in Tom Coe, my recollection is that Tom Coe, the Tom Coe opinion was vacated pending re-argument. It was, but I'm just. I agree with you. In fact, one of the judges here is on that. I know that. And I was wondering if I took a quick look at my brief to see if I said anything terribly bad about Tom Coe. It was in another case. It was in another case I said that. I made a notation as your comments. Very well. Maybe the other case is more, but it hasn't been called for argument. But it is a problem. What are we going to do with that? You know what? Honestly, the best answer I can give you is I don't know. And I tried to think of the questions that you might ask me. And it seems to me the fair question to ask of anybody standing up here is what you've asked. What are we supposed to do? And I suppose that what you could say is, what I would say is, look, you sit here. You look at the facts, the record before you. And you come up with the widest range of reasonable sentences you can possibly think of on this record. And then I would say bump it out about another 25%. And if there is absolutely no way that this case fits in that reasonable range, then we have an issue. The problem with that approach is that that requires you to do what, in effect, becomes a de novo review of setting the reasonable range. And doesn't it also take us skipping over an important step, Mr. Lyons, and that is looking at what the district court judge actually said? Absolutely. I mean, we have to look at what Judge Robinson said. And when we do that, we have to confront the arguments that Ms. Eisenstein has put before us, where the comments include things like, there's nothing remarkable here about this defendant, the history, the crime is a serious crime. Sure. And then a statement that, in effect, I mean, I've got the page in front of me. I could quote it for you if you want to hear it. But, in effect, she says, jail time just doesn't make sense to me, since he basically was ripping off his business partner, so probation. That's what she said. I can address certain of those issues that were raised by the government, if you like. Let me just ask you a couple, a follow-up on Judge Eulens. Yes, sir. Maybe a little different spin on it. Ms. Eisenstein has raised the issue that the district court didn't make clearly erroneous findings on no public financial harm, no public victim. Mm-hmm. Okay. To address that. Whether that's correct or not. Yes. Okay. That's what we have here. We've got the argument that those were clearly erroneous. Yes. And I think, in looking at the records, you have to acknowledge that, at least, the district court didn't say much about the public financial harm and clearly said that there was only a private and not a public victim. I agree. Okay. So you then go to what else did they say? What else did the district court say that justified this variance under the 3553A factors that took this away from the guideline range? And I'll even give you, for the purpose of my question, your 25% example. Yes. Okay. And what are you left with? May I address the public-private and then go to the what are you left with? Go ahead. All right. The court was certainly aware that the guy had pled guilty and was being sentenced for a tax fraud case. I understand. The tax fraud case, and the argument we made in the brief, was this was what I view as a tag-along tax fraud case. It was the exact dollars that we were accused of defrauding people of. I will tell you, Your Honor, in my experience, I used to never see that sort of tag-along charge. We had it here. I made the argument in the brief, and whether it's well-founded or not, you'll decide. But, you know, in the end, he has to make restitution. When he makes restitution, he's going to get a deduction, it seems to me, because that's the income. How's he going to get a deduction? He's going to claim it. And he's going to say that. Where do you get a deduction for that? He's going to make a deduction because this is income that he had previously picked up. He might be able to amend his tax return, but he's not going to get a deduction. But I will tell you, Your Honor, that this argument, that there was a public loss, was not made by the government below. I grant you once the judge said what she said, they didn't have a chance to say anything. But before that, the only thing they talked about was the loss to the victim. All right. Having said that. Having said that, Joda, what are we left with? I think what you're left with is the family, circumstances, and what we quoted in our brief. How is that atypical? Say again? How is that atypical? Honestly, Your Honor, I don't think it has to be atypical. I mean, if I said it's atypical, you would say that the district court said in the transcript, and she did, I've considered family circumstances. This is before we got to the variance issue. Mental illness, too, you had that. Say again? Mental illness. That was urged as a grounds for variance, and she found against us on that ground. Well, on departure, but did she make a holding contrary to the defense with respect to a variance on that ground? No. What she said was, I declined to depart on that ground. She then continued and said, in getting to the issue of variance, she said, in considering everything in the case, the choices that were made, the reasons that were, something like the reasons they were made. And she continued on to the family. I think really the strongest argument here for the defendant is if you look at the letters that were sent, which we put in our brief, and I will tell you, Your Honor, I filed a motion to have them included in a supplemental appendix, which the court never acted on. I think they are part of the record because they were appended to the pre-sentence report. But they strike a common theme of injury to the defendant's family in the event that he were removed from his family. I know that Ms. Eisenstein said that I was counsel at sentencing. And I did say that I would not ask for probation. But what I said was I wouldn't ask for straight probation because I knew that wasn't going to happen. And I also conceded, I said, look, I understand that a reasonable range could include incarceration. That's clearly within the range. But I also said, and this is the part the government always seems to forget, is that I said perhaps a combination of home confinement and community confinement would satisfy the goals of the statute and the goals of deterrence and the goals of public accountability. And in the end, that's what the judge did. And so it wasn't that the judge said this is ridiculous but I'm doing it anyway. It wasn't that I said this is ridiculous and then she did it anyway. She did what, respectfully, we suggested to her. And so I think that was an appropriate situation. Any time we have an erroneous statement by a judge, is that going to be a procedural error that will require us automatically to remand? No, because this calculus is subject to the rubric of harmless error. And the question would be, as you pointed out earlier, well, what happens when we go back? I mean, if you sent this back to Judge Robinson, my guess is that you'd get the same result. You might get a slightly more expansive explanation. But I don't think you're going to get a different result. One of the problems that we deal with here, one of you asked, well, could we send it back and say thou shalt impose some incarceration? Well, the problem that I've been scratching my head about ever since I read Tomko was, what do you do if a judge comes back, probably would not be a good idea, but says, okay, here's one day incarceration. And it's a ridiculous example, but it's designed to address the problem. The district judge is going to sit there and say, well, what am I supposed to do? I'm guessing what it is, what the least common denominator will be. And the Supreme Court has said that we really need to trust our judges. And, by the way, on this issue of public-private where the court said, in other cases, I haven't put people in jail, I understand how you could call that a sentencing practice. And if a practice becomes a capital P practice, then there's a problem because sentencing needs to be individualized. But she was doing something else there that she's been told to do by the Supreme Court, and that is to address the issue of disparity. And what she was saying was, this is how I have treated similar cases in the past. On the issue of credit card fraud or identification fraud, I suspect that what the judge was talking about was widespread identity fraud, not singular identity fraud. And so I think she gets the benefit of the doubt in terms of supporting the record in that regard. One of the things that I think, back to this issue of what sets this fellow apart from other folks, yesterday I think one of the judges, and it may have been the district judge, said, well, why is this guy extraordinary in the other case? And I remember I was sitting out here. I came up to get a little bit of a hint as to what was going on. And I thought to myself, that's not the test anymore. It used to be the test, at least in this circuit, the compelling reasons test. And I understand compelling reasons still is the test under the law, and the Supreme Court has said something about compelling reasons. But the thing that we struggle with is, well, if it doesn't have to be proportionate, what does it mean to be a compelling reason? And I don't know the answer to that. I would suggest in this case. When it reads through the sentence in colloquy, what could we identify as a justification for the sentence in light of the other comments made by the district judge? I think you have to deal with the totality of the circumstances. But to answer your question directly, she got to the very end. And she said, if I balance the harm to his family, which is clearly evident from the letters that were written to the court and are set out in our brief, if I balance the harm to his family against the cost of incarceration, it doesn't seem to make any sense to me to incarcerate this man. She did impose. The Supreme Court has recognized that probation itself has a coercive effect. She did impose home confinement. She did impose restitution. I will tell you, Your Honor, that he has made his restitution payments faithfully. He's made a partial payment towards his tax liability since he was placed on probation. Did he pay the civil settlement? He borrowed the money to do that. He refinanced his house, is what he did, and borrowed part of it from his father. So he did pay that settlement. Absolutely. $350,000. He's paying someone else. He's making payments to pay that back. Well, he's on the hook for it, and he refinanced his house to do it. His home secures that. That was kind of a – this was a – Should that be a factor? It should. Of course it should. Because I know the government says that it should not be a factor because the $177,000 was on top of that, but it should be a factor for two reasons. Number one, it shows immediate remorse. He did that prior to the time the criminal case came forward because it was the right thing and the appropriate thing to do. I know that there's a question about the amicable nature of the settlement with the victim. Well, it is true that the victim came in to the pre-sentence officer and said, we have $2 million in loss. I said, and this is in the record, I said, I'd like a hearing on that. The government, to its credit, said, you know what, we can't prove that $2 million in loss, but we can deal with $177,000. I said, all right, I can deal with $177,000. Then up came the issue of restitution. I said, don't we get credit for that $350,000? Answer, no. My response was, okay, I didn't have much choice at that point. That's how we got to that point. And so if you look at the whole picture, which is what we need to judge here, she said in the end, I don't think it makes any sense, balancing family and cost. And we have cited the cases that say, I don't think there's any doubt that balancing family is appropriate, impact on family. But in addition, we have cited the cases that said, and there's one or two, that said it is permissible to consider the cost of incarceration. And at the end of the day, this was the balance the judge struck. Well, one could also, I don't know, when she says the costs associated with putting someone like Mr. Levinson to jail, quote, unquote, do costs necessarily have to be viewed as monetary costs? No, they could be emotional costs on his family. The record in this case reflected Mr. Levinson had two young sons, one of whom was learning disabled. He was very important in the lives of both of his young sons, and that a number of people in the community had come forward and noted that involvement and noted the impact, including, as I recall, a pediatrician familiar with the case, the impact this would have on the one young son who had the issues. Mr. Lyons, didn't we in Kononchuk critique the district court in that case for failing to explain what warranted the disparity in treatment between Kononchuk and other defendants? Yes, that is true. Doesn't the same argument lie here in comparing Levinson versus other people who may have family who are going to be affected? It does. Does it make sense? It does apply, Your Honor. Kononchuk, though, I would hasten to note was, in the end, at the end of the day, a procedural due process decision, not a substantive due process decision. And in Kononchuk, my recollection is that there had been a failure to make explanation of the balance that was ultimately struck, whereas in this case there was an explanation that was laid out, like it or not, of the balance that was ultimately struck. I see that I'm down to my last three seconds. I will answer any questions you have. Thank you, Mr. Lyons. Thank you. Ms. Eisenstein. Thank you, Your Honor. To start, where are the guidelines here? Under Gull, guidelines retain their central role. And in this entire discussion, the guidelines have gotten very little attention. First, if the district court was going to vary from the ---- Do you agree with Mr. Lyons' demonstration of guidelines plus 25 percent? Your Honor, we do not, because in this case the question is not what could be for wire fraud in general a conceivable sentence. The question is, if the district court decides to vary, which, of course, after Booker it has the authority to do, either first the district court should point to individual circumstances of the crime, the defendant, or under some other 3553A factor, individual circumstances to this case, or the district court also under Kimbrough has the authority to vary on policy grounds. However, in the Kimbrough analysis, Kimbrough specified that if it's a policy type of disagreement with the guidelines, number one, the district court has to engage that policy. Here, the district court didn't even mention the fact that the policy statements of the guidelines for wire fraud and tax fraud specifically say that they are intended to impose jail time for white-collar defendants just like Mr. Levinson, and yet the district court didn't even specify why it is that that policy is unreasonable. So you're assuming ---- Procedural error or substantive error? Your Honor, I believe that's really a substantive error. Well, and it assumes, doesn't it, that she was disagreeing as a matter of policy with the guidelines? Exactly. And so then if it's an individual circumstance, defense counsel points to, number one, the civil settlement, which the district court expressly did not say was tied to remorse in any way. She really tied it to the nature and circumstances of the offense. And Kavonchuk is instructive on the fact that while that case dealt with restitution, there are many cases that deal with the fact that payment in general by a white-collar defendant of certain aspects, payback of certain aspects, and here not even entirely the cost of the fraud, is not a very good factor because it really creates a disparity between those who can pay and those who cannot. Family. District court, and I read from the record here, and this goes to the letters in the family. The district court says, All of Mr. Levinson's supporters, and this is in the letters, have mentioned his family and predict quite correctly that they would suffer most if he goes to jail. That sad outcome is endemic to most criminal cases as defendants have families who suffer because their loved one wasn't thinking about them during criminal activity. As heartfelt and moving as the submitted remarks are, again, Mr. Levinson's situation does not stand out in this regard. That was the finding of the district court with regard to the letters in the family. So then how could that be a basis for such a substantial variance here? Well, when you say such a substantial variance, what was the sentence given in Gall? Your Honor, the sentence was probation and the guidelines called for 30 months. But that case is clearly distinguishable. What did the Supreme Court say? If the Supreme Court didn't say, hey, you appellate judges, back off, what did it say? Your Honor, clearly the abuse of discretion standard is deferential. But in Gall, the case was distinguishable. The district court laid out a reasoned opinion why that case was very distinguishable and different from the run-of-the-mill drug conspiracy case. The defendant had withdrawn from the conspiracy in that case, something that the Supreme Court found significant. And there were several other significant individual factors that this case simply does not present. So it's the right thing to do to send it back and say there may be reasons for this, but so far we can't see them? Yes, Your Honor. And the public deserves that, because this is a case in which, and a high-profile case, in which the defendant defrauded its company, made false statements on its tax return, and yet received virtually the lowest type of punishment available, notwithstanding the guidelines. Thank you, Ms. Leisinger. Thank you. And we thank both counsel for excellent arguments, and we'll take the matter under advisement.